Rafael **TORRES RAMIREZ**, et al.,
Plaintiffs, Appellees,

v.

Juan **BERMUDEZ GARCIA**, et al.,
Defendants, Appellants.

No. 89–1103.

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1989.
Decided March 13, 1990.

Reina Colon de Rodriguez, for defendants, appellants. Rafael Ortiz Carrion, Sol. Gen., Norma Cotti Cruz, Deputy Sol. Gen., and Jose R. Garcia Perez, Atty., Federal Litigation Div., Hato Rey, P.R., on brief for defendants, appellants.

Laura Gonzalez Bothwell, Santurce, P.R., for plaintiffs, appellees.

Before TORRUELLA, Circuit Judge, and COFFIN, Senior Circuit Judge, and LAFFITTE, District Judge.*

* Of the District of Puerto Rico, sitting by designation.

COFFIN, Senior Circuit Judge.

Plaintiff Rafael Torres Ramirez filed a civil rights suit under 42 U.S.C. § 1983 against defendants Juan Bermudez Garcia and Justo Luna Cruz based on an allegedly unconstitutional arrest. A jury found liability and Torres was awarded damages. Defendants appeal. We reverse the judgment against defendant Bermudez, finding the evidence against him to be insufficient. Although we find the evidence sufficient as to defendant Luna, we remand to the district court for new findings concerning the timeliness of plaintiff's amendment of the complaint to include Luna.

Torres was ordered by the Superior Court of Puerto Rico for the District of Guayama to pay a sum on a consumer complaint. Payments were to be made in three installments, the third of which was late. On August 14, 1986, the Guayama court issued a warrant for plaintiff's arrest for nonpayment. When he learned of the pending warrant, Torres made the final payment and the warrant was vacated on September 19, 1986. In the meantime, however, a copy of the warrant had been sent to the marshal's office in Caguas, where the plaintiff resides. A second copy was kept at the Guayama marshal's office, in accord with the usual practice.

On December 12, 1986, a Caguas marshal went to plaintiff's home to arrest him. Not finding him present, the marshal left word for Torres to report to the marshals' office. Later that day, Torres appeared at the courthouse and explained that the debt had been paid and the warrant vacated. When so informed, defendant Bermudez Garcia, the Caguas general marshal, confirmed the story and released Torres. At this point, Bermudez claims to have written a certificate of negative service on the back and returned the warrant to Guayama. If we take the facts in the light most favorable to the plaintiff, however, the warrant was returned without that notation.

On January 29, 1987, the Guayama marshal's office sent out another copy of the warrant. It was accompanied by a letter

bearing the stamp of defendant Luna Cruz, the general marshal of the Guayama court. The letter requested execution of the warrant and referred to a hearing set for February 17, 1987; the docket, however, showed no hearing scheduled for that date. The Guayama marshal's office log book shows an undated notation that the warrant had been vacated next to the log entry of August 26, 1986, the date the original warrant was received. The jury could have believed that Luna knew when he sent out the warrant that it had been vacated.

The warrant was received by the Caguas marshal's office and assigned to a marshal to execute. The marshal found Torres at home and attempted to arrest him. Torres informed the marshal that the matter had been resolved. The marshal made an effort to confirm this by radio and telephone, but was unable to reach the proper person. He therefore completed his arrest and escorted Torres to the Caguas courthouse.

On reaching the courthouse, Torres again approached defendant Bermudez. Bermudez ordered that the story be checked and, upon confirmation, ordered Torres' release. He further ordered that a certificate of negative service be written and that Torres be provided with a copy so that the event could not reoccur. Later that same day, Torres was approached by another Caguas marshal, who informed him that the warrant still existed. No arrest was made at this time.

The defendants requested dismissal of the action and summary judgment on the grounds that the complaint did not allege more than negligence and that the offered proof could not amount to more than negligence. The district court denied the motions. Defendants moved for a directed verdict, and, after a jury verdict for plaintiff in the amount of $5,000 against each defendant, for judgment notwithstanding the verdict and new trial. All motions were denied.

On appeal, defendants raise several issues. They maintain that plaintiff never alleged more than negligence nor specifically invoked the Due Process Clause, so the motion to dismiss was improperly denied. They further argue that the evidence proved only negligent action at best, and as such was insufficient as a matter of law to show a violation of plaintiff's constitutional rights. They consequently claim that their motions for summary judgment, directed verdict and judgment n.o.v. should have been granted. In addition, they raise absolute or qualified immunity in defense of their actions. Finally, defendant Luna maintains that he was improperly joined in this action after the running of the statute of limitations.

## I. *Sufficiency of allegations and proof*

The Supreme Court clearly has held that "not all actions of state officials that result in a loss of life, liberty, or property are 'deprivations' within the meaning of the Fourteenth Amendment." *Germany v. Vance*, 868 F.2d 9, 17 (1st Cir.1989) (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels*, 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original). Therefore, negligent conduct is not actionable under § 1983.

In this case, Torres averred in his complaint that the alleged actions constituted negligence on the part of the defendants that had resulted in a loss of his liberty. The defendants moved to dismiss. The district court found that while the complaint failed to invoke the proper level of culpability and the words "due process," plaintiff alleged *facts* that, if true, would amount to a violation of the Due Process Clause. The court therefore denied the motion to dismiss because plaintiff stated a cognizable claim of violation to his constitutional rights.

The district court is required to construe pleadings liberally. It is not fatal

to a complaint that a legal theory has been mischaracterized or that the precise language invoking jurisdiction has not been used. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 604 (5th Cir.1981); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206 at 76–77 (1969). Moreover, in his opposition to defendants' motion to dismiss, the plaintiff alleged that the actions stated in the complaint constituted "deliberate callous indifference" to the plaintiff's liberty interest. The parties were therefore aware of plaintiff's legal theory. There was no prejudice to the defendant, who was given ample opportunity to challenge the sufficiency of the allegations when measured against the proper standard. The purpose of pleading, to give parties adequate notice of claims and the grounds on which they rest, was served here. Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, the district court did not err in denying defendants' motion to dismiss.

We therefore must consider whether the evidence supported a claim for liability under § 1983. In *Daniels* and *Davidson*, the Supreme Court left open the question of whether less than intentional conduct ever can cause a deprivation of constitutional dimension. This circuit, however, has held that government officials may be held liable for conduct that "reflects a reckless or callous indifference to an individual's rights." *Germany*, 868 F.2d at 18 (citing *Maldonado Santiago v. Velasquez Garcia*, 821 F.2d 822, 831 (1st Cir.1987); *Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir.1983)). In *Germany*, this court spent considerable time articulating the recklessness standard. The court, while acknowledging that the boundaries between negligence, gross negligence, recklessness and callous indifference were amorphous, indicated that recklessness and callous indifference constitute a lower level of intentional conduct, whereas gross negligence is an aggravated lack of care. *Germany*, 868 F.2d at 18. The court held that the former "still may exemplify the 'arbitrary exercise of the powers

of government'" required by the Supreme Court in *Daniels, id.* (quoting *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665), while the latter will not.

■ Defendants repeatedly claimed in their motions that the conduct alleged in this case never reached the recklessness standard. We are unable to say as a matter of law that plaintiff did not present adequate evidence as to defendant Luna. The jury could have believed that Luna knowingly processed an invalid warrant or that he recklessly acted with disregard for the probability of plaintiff's ultimate illegal arrest. The jury could have believed that Luna actually knew that the warrant had been vacated when he mailed it in January 1987, because there was a notation to that effect in the Guayama log book. Alternatively, the jury could have believed that he was reckless by not checking his own records before recirculating a warrant that was five months old.

■ With respect to defendant Bermudez, however, the evidence viewed in the light most favorable to the plaintiff showed only that he neglected to make a notation on the back of the December warrant before sending it back to Guayama. This evidence falls far short of proving the kind of intentionality contemplated by *Germany* and *Daniels*. It shows no more than negligence. We therefore reverse the jury's verdict as to defendant Bermudez.

## II. *Immunity*

Defendant Luna is an executive officer whose conduct typically would be shielded by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986). Appellant claims, however, that he is entitled to judicial absolute immunity under the Supreme Court cases extending such full immunity to executive branch officials who perform quasi-judicial functions, *see Butz v. Economou*, 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978), and those who perform prosecutorial functions "intimately associ-

ated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). As the Court recently has noted, "it [is] the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988).

■ State officers bear the burden of showing in a particular case that public policy requires an exemption as broad as absolute immunity. *Butz v. Economou*, 438 U.S. at 506, 98 S.Ct. at 2910. Indeed, the Supreme Court in *Forrester* held that not all functions performed by a judge were entitled to absolute immunity. "Absolute immunity ... is 'strong medicine, justified only when the danger of [officials' being] deflect[ed from the effective performance of their duties] is very great.'" *Id.* at 230, 108 S.Ct. at 545 (quoting *Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting)). In the instant case, Luna was not performing a quasi-judicial function. He was not a court clerk performing a judicial function by issuing a warrant; he was executing a vacated warrant. *Cf. Foster v. Walsh*, 864 F.2d 416 (6th Cir.1988). Nor was he directed to take the actions he did by court order. *Cf. Lockhart v. Hoenstine*, 411 F.2d 455, 459 (3d Cir.1969). Similarly, he was not performing a prosecutorial function as in *Malachowski v. City of Keene*, 787 F.2d 704, 712 (1st Cir.1986). Defendant Luna has not persuaded us that the danger that a marshal will be deflected from the effective performance of his duties is significant enough to warrant absolute immunity. His actions are more like those of the police officers making a false arrest in *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967) or seeking a warrant in *Malley*, 475 U.S. 335, 106 S.Ct. 1092. He has offered no reasons why the general rule of qualified immunity, which shields "all but the plainly incompetent or those who knowingly violate the law," *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096, should not apply here. We find that Luna was not entitled to absolute immunity.

■ The district court similarly did not err in finding that he was not entitled to qualified immunity as a matter of law. An officer is entitled to qualified immunity when his conduct is objectively reasonable based on the information available at the time and in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In this case, there was a clear question of fact whether the actions taken by Luna were objectively reasonable given what he knew. Defendant admits that the knowing service of an invalid warrant would violate plaintiff's civil rights. The evidence taken in the light most favorable to the plaintiff shows that Luna processed an arrest warrant he knew or should have known had been vacated. The case is therefore quite different from *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (no requirement that officer investigate claims of innocence) and *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984) (officers not required to investigate facially valid warrant). Luna was not entitled to qualified immunity as a matter of law.

### III. *Statute of Limitations*

Defendant Luna claims that the district court erred when it allowed plaintiff to add him as a party. He asserts that Torres' amendment of the complaint to include him on February 16, 1988 was barred by the one-year statute of limitations which expired on February 10, 1988.[1]

The precise basis for the district court's decision is unclear from the record. Torres argued both that the amendment related back to the date of the original complaint

---

1. The parties agree that the one-year statute governing tort actions applies. P.R.Laws Ann. tit. 31, § 5298 (1968); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (state statute of limitations governing tort actions is to be applied to § 1983 claims); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31–32 (1st Cir.1985).

under Fed.R.Civ.P. 15(c) and that the action did not accrue until February 1988 because Luna fraudulently concealed conduct which caused plaintiff's arrest.

■ Rule 15(c) could not have prevented Torres' claim against Luna from being time-barred. *See, e.g., Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99 (1st Cir.1979). An added defendant must have notice of the action, either actual or constructive, before the running of the statute of limitations. Fed.R.Civ.P. 15(c); *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). Plaintiff never argued in his memoranda that Luna had notice prior to February 16, 1988; nor is this a circumstance where constructive notice typically is found. *See Hernandez Jimenez,* 604 F.2d at 102–103 (identity of interest principle is most often applied to parent/subsidiary corporations or closely related corporations).

Moreover, there were no assertions that, "within the period provided by law for commencing the action against [him] ... [Luna] knew or should have known that, but for a mistake concerning the identity of the proper party," Fed.R.Civ.P. 15(c), he would have been a named party. He might well have thought that he was not named in the action "for tactical reasons or because [plaintiff] lacked evidence ... when he filed the complaint." *Hernandez Jimenez,* 604 F.2d at 103. *See also, Wood v. Woracheck,* 618 F.2d 1225, 1230 (7th Cir. 1980). In fact, plaintiff's own assertions indicate that there was no mistake in identity but an absence of evidence pointing to a claim against Luna.

We therefore find that Fed.R.Civ.P. 15(c) could not have served to bring the amendment within the limitations period. Torres

apparently concedes this point, not arguing it on appeal. If the district court allowed Luna to be added as a defendant on this ground, it was error.

It is no longer clear whether the federal doctrine of fraudulent concealment (frequently referred to as "equitable tolling") continues to apply to § 1983 actions.[2] *See Rivera–Gomez v. de Castro,* 843 F.2d 631, 633 n. 3 (1st Cir.1988); *Ramirez Morales v. Rosa Viera,* 815 F.2d 2, 4 (1st Cir.1987); *Hobson v. Wilson,* 737 F.2d 1, 33 n. 100 (D.C.Cir.1984). *See also,* Marcus, *Fraudulent Concealment in Federal Court: Toward a More Disparate Standard?,* 71 Geo.L.J. 829, 834 (1983). Because, however, both federal and Puerto Rican law preclude the commencement of the statutory limitations period where the defendant has concealed elements of his wrongdoing, we need not decide the issue at this time.

■ The federal doctrine of fraudulent concealment delays the commencement of a limitations period until plaintiff discovers the existence of his cause of action, providing certain conditions are met. "The defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and the plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence." *Hernandez Jimenez,* 604 F.2d at 99.

Similarly, under Puerto Rican law, an action will not accrue where the defendant has fraudulently concealed facts essential to the action. *See,* P.R.Laws Ann. tit. 31, § 5298. *See also Ramirez Morales,* 815 F.2d at 4; *Rivera–Gomez,* 843 F.2d at 633; *Rivera Encarnacion v. E.L.A.,* 113 D.P.R. 383, 386 (1962). Moreover, in Puerto Rico,

**2.** The Supreme Court has directed federal courts to apply state tolling policies. *See, Hardin v. Straub,* —— U.S. ——, 109 S.Ct. 1998, 2002, 104 L.Ed.2d 582 (1989); *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *Board of Regents v. Tomanio,* 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). Such direction presumably applies both to tolling statutes and their absence when "a

State *reasonably* could decide that there is no need to enact a tolling statute...." 109 S.Ct. at 2003 (emphasis supplied). In these cases, however, the Court did not address the well-established doctrine of fraudulent concealment or express its intent to overrule its own precedent in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) ("[t]his equitable doc-

a defendant may be estopped by his own misconduct from invoking a limitations defense. *Rivera–Gomez,* 843 F.2d at 633–34 (quoting *Velilla v. Pueblo Supermarkets,* 111 D.P.R. 585, 588 (1981) ("doctrine of equitable estoppel ..., as well as the general axiom of *bona fides,* [can] impede [a party] from successfully invoking the defense of prescription"); *Berrios v. University of Puerto Rico,* 116 D.P.R. 88 (1985) (same)).[3]

██ It is not clear whether the district court ever considered the requirements of these doctrines because its decision may have rested on Rule 15(c). We therefore remand to the district court for findings on whether those requirements were met.

## IV.  *Conclusion*

Having addressed each of appellants' claims, we *reverse the judgment of the district court as to defendant Bermudez Garcia. The judgment as to defendant Luna Cruz is vacated and the action is remanded for further proceedings consistent with this opinion. No costs.*

---

trine is read into every federal statute of limitation").

**3.** We express no opinion as to whether Puerto Rico requires plaintiff's exercise of due diligence.