William E. LEVESQUE and
Karen A. Levesque

v.

MILES INC.

Civ. No. 92–94–JD.

United States District Court,
D. New Hampshire.

March 18, 1993.

Gregory J. Wenger, Plaistow, NH, for plaintiffs.

Jennifer A. Eber, Concord, NH, for defendant.

## ORDER

DiCLERICO, Acting Chief Judge.

In June 1990, plaintiff William Levesque was carrying a plastic spray-pump container of defendant Miles Inc.'s Cutter insect repellent. He alleges he was injured when, without warning, the container leaked and the insect repellent ignited. Levesque suffered injuries, including second degree burns, over his left leg. Subsequently, Levesque and his wife, Karen, filed this lawsuit.[1] Because the plaintiffs are New Hampshire residents and the defendant is incorporated under Indiana law, the court has jurisdiction pursuant to 28 U.S.C.A. § 1332(a) (West Supp.1992). The defendant has moved to dismiss that portion of count one of the complaint alleging a claim of failure to warn and to dismiss that portion of count two of the complaint alleging a common-law implied warranty claim. For the following reasons, the court grants the defendant's motion regarding count one but denies the defendant's motion regarding count two.

### Discussion

The defendant initially moved to dismiss counts one and two of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, because the defendant has already filed an answer to the plaintiffs' complaint, the pleadings have closed under Fed.R.Civ.P. 7(a). As such, the court will treat the defendant's motion to dismiss count two as a motion for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c).

However, the court will treat the defendant's motion to dismiss count one as a motion for summary judgment under Fed. R.Civ.P. 56. The court's authority to convert the motion to a motion for summary judgment comes directly from Rule 12(b)(6) itself. The rule states, in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief

---

1. Karen Levesque's claims for loss of consortium and mental anguish derive from William Levesque's claims for bodily injury. To the extent William Levesque's claims are allowed to proceed, Karen Levesque's derivative claims will also be allowed to proceed. However, to the extent that William Levesque's claims are dismissed, Karen Levesque's derivative claims will also be dismissed.

can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b); *see also Chaparro–Febus v. International Longshoremen Ass'n,* 983 F.2d 325, 332 (1st Cir.1992).

In the plaintiffs' objection to the defendant's motion to dismiss count one, they state:

The defendant has offered no proof or supporting affidavits to the court to sustain the assertion that it's [sic] activities with respect to the labeling of it's [sic] product were subject to [the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")], that it complied with FIFRA, or that the labels in question were approved by the [Environmental Protection Agency ("EPA")] pursuant to FIFRA.

*See* Memorandum in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss Plaintiff's Claim of Failure to Warn ("Plaintiff's Objection") at 2–3. The defendant appeared to view this language as an invitation to consider the failure to warn issue in the context of a motion for summary judgment and filed a reply memorandum. In that memorandum, the defendant states: "Defendant Miles Inc. now respectfully requests that if this Court finds there is a matter pertinent to this motion, that it dispose of it as provided in Federal Rule of Civil Procedure 56." *See* Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Claim of Failure to Warn ("Reply Memorandum") at 2. In addition, the defendant attached exhibits relating to its compliance with the EPA pesticide labeling registration procedure.

When the court converts a Rule 12(b)(6) motion to a motion for summary judgment, it must give all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). However,

[the First C]ircuit does not mechanically enforce the requirement of express notice

of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment. Instead, we treat "any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy."

*Chaparro–Febus,* 983 F.2d at 332 (quoting *Moody v. Town of Weymouth,* 805 F.2d 30, 31 (1st Cir.1986)).

■ While the court did not give the plaintiffs express notice of its intent to convert the motion for judgment on the pleadings to a motion for summary judgment, the court is satisfied that conversion is appropriate under the analysis set forth in the *Chaparro–Febus* decision. The plaintiffs received the defendant's exhibits regarding the EPA labeling procedure and the defendant's memorandum requesting the court to consider the motion as one for summary judgment. The plaintiffs had more than three months to respond to the labeling information and to controvert its accuracy, but did not do so. Most importantly, the plaintiffs, as noted earlier, appeared to invite the defendants to submit information outside the pleadings to resolve the failure to warn issue. Under these circumstances, the court concludes there is no prejudice to the plaintiffs in converting the defendant's motion to dismiss count one to a motion for summary judgment.

## I. Count One: Failure to Warn

In count one of the complaint, the plaintiffs contend that William Levesque was injured by the defendant's "[failure] to give adequate[,] effective and continuing warnings concerning the foreseeable dangers of the foreseeable uses" of the defendant's insect repellent. Complaint, Count I, ¶ 7. The defendant has moved for summary judgment, arguing that the plaintiffs' claim is preempted by FIFRA, 7 U.S.C.A. § 136 *et seq.* (West 1980 & Supp.1992), because, if proven, it would constitute state-imposed "requirements for labeling or packaging in addition to or different from those required [under FIFRA]." *Id.* § 136v(b).

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992). It is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The defendant bears the initial burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 227–28 (1st Cir.1992). The court must view the entire record in the light most favorable to the plaintiffs, " 'indulging all reasonable inferences in [their] favor.' " *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). However, once the defendant has made a properly supported motion for summary judgment, the plaintiffs "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

The court's resolution of whether FIFRA preempts the plaintiffs' failure to warn claim requires a multi-step inquiry into the general principles of preemption, the history of FIFRA, the effect of the United States Supreme Court's preemption analysis in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), and the court's post-*Cipollone* construction of FIFRA's express preemption clause, 7 U.S.C.A. § 136v(b).

A. Preemption—General Principles

As early as 1824, the United States Supreme Court, under the rubric of the Supremacy Clause,[2] declared that state laws which "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution, are preempted and, therefore, invalid." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). The First Circuit has recently noted that "[t]his verity remains firmly embedded in our modern jurisprudence." *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 822 (1st Cir.1992) (citing *Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991)); *Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2374, 85 L.Ed.2d 714 (1985), *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1117 (1st Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990)), *cert. denied*, —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

■ The Supreme Court has drawn a distinction between express and implied preemption. *Id.* "Express preemption occurs 'when Congress has "unmistakably ... ordained" that its enactments alone are to regulate a [subject, and] state laws regulating that [subject] must fall.' " *Id.* (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (citation omitted)). When a court considers an issue of express preemption, "the only remaining question is whether a particular state statute intrudes into the federal pale." *Id.* (citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *Cable Television Ass'n v. Finneran*, 954 F.2d 91, 98 (2d Cir. 1992)).

■ By contrast, "[i]mplied preemption comes in a wide variety of sizes and shapes. Indeed, we have said that '[t]he concept ... has a certain protean quality, which renders pigeonholing difficult.' " *Id.* (quoting *French*

---

**2.** The Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any States to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

*v. Pan Am Express, Inc.,* 869 F.2d 1, 2 (1st Cir.1989)). The First Circuit has noted that

> [i]mplied preemption can occur when Congress constructs a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it"; or when an "Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject;" or when the goals of, and obligations imposed by, the federal law make manifest a purpose to uproot state law.

*Id.* 971 F.2d at 822–23 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *see also Mortier,* —— U.S. at ——, 111 S.Ct. at 2481–82, 115 L.Ed.2d 532; *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). In addition, implied preemption can occur "in situations involving actual conflicts, such as when compliance with both federal and state regulation is an impossibility," *Greenwood,* 971 F.2d at 823 (citing *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)) or when state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

▇▇▇ Common elements are present in both express and implied preemption analysis. *Id.* Any preemption analysis begins with the question of whether Congress intended federal law to preempt state law. *Id.* Next, any preemption analysis must recognize that "the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (citation omitted). Courts must also recognize that "the authority to displace a sovereign state's law is 'an extraordinary power.... that we must assume Congress does not exercise lightly.' " *Id.* (quoting *Gregory v. Ashcroft,* —— U.S. ——, ——, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991)). "Even federal statutes that contain express preemption clauses must

be viewed through the prism of this assumption." *Id.* (citing *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, —— – ——, 112 S.Ct. 2608, 2615–19, 120 L.Ed.2d 407 (1992) (plurality opinion), —— U.S. at ——, 112 S.Ct. at 2625 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part)).

### B. FIFRA

Congress initially enacted FIFRA in 1947 and ordered the Agriculture Department to oversee its application. *See Burke v. Dow Chem. Co.,* 797 F.Supp. 1128, 1134 (E.D.N.Y. 1992). In 1970, Congress transferred responsibility for pesticide regulation to the EPA. *See id.* (citation omitted). Congress completely revised FIFRA in 1972 "in light of concerns over the health risks of DDT and other chemical pesticides [and] ... 'transformed FIFRA ... into a comprehensive regulatory statute.' " *See id.* (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 992, 104 S.Ct. 2862, 2867, 81 L.Ed.2d 815 (1984)).

"Congress recognized that the control of pesticides required a careful balancing of benefits against risk." *Papas v. Upjohn Co.,* 926 F.2d 1019, 1022 (11th Cir.1991), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).

> While appropriate pesticides properly used are essential to man and his environment, many constitute poisons that are too dangerous to be used for any purpose. Others are dangerous unless used extremely carefully.... Pesticides therefore have important environmental effects, both beneficial and deleterious. Their wise control based on a careful balancing of benefit versus risk to determine what is best for man is essential.

*Id.* (quoting S.Rep. No. 92–838, 92d Cong.2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News at 3993, 3996). Congress designated the EPA Administrator to determine whether to register a pesticide and, if so, under what conditions. *Id.*

Under FIFRA, no pesticide may be sold in the United States unless it has been registered with the EPA. 7 U.S.C.A. § 136a(a). Applicants who wish to register a pesticide must submit performance data and draft

product labels to the EPA. *See Burke,* 797 F.Supp. at 1135. However, the data the applicants must submit depends on the nature of the pesticide and its intended use. *See id.; see also* 40 C.F.R. § 158.100–158.740 (1990). While the EPA does not verify independently the data provided, it does determine whether the testing methods used are "acceptable" in light of generally accepted scientific standards. *Burke,* 797 F.Supp. at 1135 (quoting 40 C.F.R. § 158.80).

After reviewing this information, the EPA must register the product if it determines that:

> (A) its composition is such as to warrant the proposed claims for it;
>
> (B) its labeling and other material require[d] to be submitted comply with the requirements of this subchapter;
>
> (C) it will perform its intended function without unreasonable adverse effects on the environment; and
>
> (D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C.A. § 136a(c)(5).[3] "Label" and "labeling" are broadly defined in the statute:

> (1) Label.—The term "label" means the written, printed or graphic matter on, or attached to, the pesticide ... or any of its containers or wrappers.
>
> (2) Labeling.—The term "labeling" means all labels and all other written, printed, or graphic matter—
>
>> (A) accompanying the pesticide ... at any time; or
>>
>> (B) to which reference is made on the label or in literature accompanying the pesticide....

*Id.* § 136(p). Detailed EPA regulations control the form and content of pesticide labels. *See generally* 40 C.F.R. § 156.10 (1990).

FIFRA contemplates the continued involvement of the states in regulating the sale and use of pesticides. 7 U.S.C.A. § 136v(a). However, FIFRA expressly mandates that the states may not impose requirements for labeling other than those required by the EPA. *Id.* § 136v(b). The relevant provisions of the statute provide:

> Section 136v—Authority of States
>
> (a) In general
>
>> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [EPA].
>
> (b) Uniformity
>
>> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required [by EPA].

*Id.* § 136v. Thus, the language of FIFRA "explicitly acknowledges the continuing power of the states to participate in the control and regulation of toxic substances covered by the statute." *Burke,* 797 F.Supp. at 1134.

## C. The *Cipollone* Decision

In *Cipollone v. Liggett Group, Inc.,* the Supreme Court considered the preemptive effect of federal cigarette labeling laws passed in 1965 and 1969 on state common law failure to warn, warranty and misrepresentation actions. *See* —— U.S. at —— – ——, 112 S.Ct. at 2618–25 (plurality opinion); —— U.S. at —— – ——, 112 S.Ct. at 2626–32 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part); —— U.S. at —— – ——, 112 S.Ct. at 2634–37 (Scalia, J., concurring in the judgment in part, and dissenting in part). The 1965 law, the Federal Cigarette Labeling and Advertising Act, contained the following express preemption language:

> No statement relating to smoking and health other than the [federally mandated warning] shall be required on any cigarette package ... [or] in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*See id.* at ——, 112 S.Ct. at 2616. By contrast, the 1969 law, the Public Health Ciga-

---

3. "Unreasonable adverse effects on the environment" is defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C.A. § 136(bb) (West 1980).

rette Smoking Act of 1969, contained this provision:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*See id.* at ——, 112 S.Ct. at 2617.

The *Cipollone* plurality began its analysis by noting that "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* at ——, 112 S.Ct. at 2618. Construing the 1965 provision "in light of the presumption against the preemption of state police power regulations," the plurality found no evidence of a congressional plan to preempt common-law damages actions or of a "general inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common-law damages actions." *Id.* The *Cipollone* plurality indicated the main purpose of the 1965 Act was to avoid consumer confusion by ensuring uniform labeling, a purpose whose achievement would not be undermined by state-law tort actions. *Id.*

The *Cipollone* plurality, however, concluded that Congress intended the 1969 Act to have a broader reach than the 1965 Act. *See id.* at ——, 112 S.Ct. at 2619–20.

Compared to its predecessor in the 1965 Act, the plain language of the pre-emption provision in the 1969 Act is much broader. First, the later Act bars not simply "statements" but rather "requirement[s] or prohibition[s] ... imposed under State law." Second, the later Act reaches beyond statements "in the advertising" to obligations "with respect to the advertising or promotion" of cigarettes.

*Id.* at ——, 112 S.Ct. at 2619. In reaching this conclusion, the plurality stated that the "substantial changes in wording" between the 1965 Act and the 1969 Act, and other changes such as the rewriting of the label warning, the ban on broadcast advertising, and the regulation of print advertising by the FTC, indicated that Congress intended the 1969 Act to have a broader preemptive scope than the 1965 Act. *Id.* at ——, 112 S.Ct. at 2619–20.

The Court noted that certain common law damages actions might be included in the broader preemptive scope of the 1969 Act. *Id.* at ——, 112 S.Ct. at 2620.

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

*Id.* (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). The *Cipollone* plurality acknowledged that the legislative history of the 1969 Act suggested that Congress' primary intent was prohibiting positive enactments—statutes and regulations—by states. *Id.* Nevertheless, the plurality, focusing on the plain meaning of the Act, held that the Act was not limited to such positive enactments:

> In this case there is "no good reason to believe" that Congress meant less than what it said; indeed, in light of the narrowness of the 1965 Act, there is "good reason to believe" that Congress meant precisely what it said in amending that Act. Moreover, common law damages actions of the sort raised by petitioner are premised on the existence of a legal duty and it is difficult to say that such actions do not impose "requirements or prohibitions."

*Id.* (citations omitted).

In addition, the *Cipollone* plurality rejected the argument that the phrase "imposed under State law" in the 1969 Act excluded common law damages actions from preemption. *Id.* "At least since *Erie R. v. Tompkins,* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] ... we have recognized the phrase 'state law' to include common law as well as statutes and regulations." *Id.* (citation omitted).

After setting forth this framework, the *Cipollone* plurality considered the petitioner's failure to warn claims. *See id.* at ——, 112 S.Ct. at 2621–22. The Court concluded that

> insofar as claims under ... failure to warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted. The Act does not, however, pre-empt petitioner's claims that rely solely on respondents' testing or research practices or other actions unrelated to advertising or promotion.

*Id.*

### D. The Reach of FIFRA's Preemption Clause

Prior to *Cipollone*, courts which considered whether FIFRA preempted common-law failure to warn claims based their analysis on implied, not express, preemption. *See Burke*, 797 F.Supp. at 1139 (citations omitted). In so doing, the United States Courts of Appeals for the Tenth and Eleventh Circuits held that FIFRA preempts common-law failure to warn claims. *See Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.* ("*Arkansas–Platte I*"), 959 F.2d 158, 164 (10th Cir.), *vacated and remanded for further consideration in light of Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992); *Papas v. Upjohn Co.*, 926 F.2d 1019, 1026 (11th Cir.1991), *vacated and remanded for further consideration in light of Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).[4] However, in *Ferebee v. Chevron Chemical Company*, 736 F.2d 1529, 1542–43 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), the United States Court of Appeals for the District of Columbia held that FIFRA did not preempt state common-law failure to warn claims.[5]

In view of the *Cipollone* decision, however, courts must base their decisions on whether FIFRA preempts common-law failure to warn actions solely on their interpretation of the reach of FIFRA's express preemption provision, 7 U.S.C.A. § 136v(b), and cannot fall back on an implied preemption analysis. "[C]ourts must focus on the specific wording of [FIFRA's] preemption clause, interpreting [it] narrowly in light of the presumption against preemption." *Burke*, 797 F.Supp. at 1140; *see also King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir.1993) (express preemption provision in statute forecloses inquiry into implied preemption, "because the fact that Congress included it in the [statute] implies that matters beyond its reach are not preempted").

Subsequent to the *Cipollone* decision, several courts have based their analysis on express preemption grounds and have concluded that FIFRA's preemption clause, 7 U.S.C.A. § 136v(b), preempts common-law failure to warn claims. For example, the United States Court of Appeals for the Eleventh Circuit, in *Papas v. Upjohn Co.* ("*Papas II*"), concluded that FIFRA expressly preempts common-law failure to warn claims. *See* 985 F.2d 516, 520 (11th Cir.1993). The United States Court of Appeals for the Tenth Circuit, in *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.* ("*Arkansas–Platte II*"), also concluded that FIFRA expressly preempts common-law failure to warn claims. *See* 981 F.2d 1177, 1178–79 (10th Cir.1993). The United States District Court for the Eastern District of Kentucky, in *Gibson v. Dow Chemical Co.*, also reached

---

4. A number of district courts have agreed that FIFRA preempts common-law failure to warn claims. *See, e.g., Hurt v. Dow Chem. Co.*, 759 F.Supp. 556, 558–60 (E.D.Mo.1990); *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283, 1286–89 ((W.D.Mo.1989); *Watson v. Orkin Exterminating Co.*, No. 88–2427, 1988 WL 235673, at *1 (D.Md. Nov. 9, 1988); *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404, 406–08 (E.D.Mich.1987).

5. Relying on *Ferebee*, a number of district courts have concluded that FIFRA does not preempt state common-law failure to warn claims. *See Thornton v. Fondren Green Apartments*, 788 F.Supp. 928, 930–32 (S.D.Tex.1992); *Montana Pole & Treating Plant v. I.F. Laucks & Co.*, 775 F.Supp. 1339, 1342–45 (D.Mont.1991); *Evenson v. Osmose Wood Preserving, Inc.*, 760 F.Supp. 1345, 1347–49 (S.D.Ind.1990); *Stewart v. Ortho Consumer Prods.*, No. 87–4252, 1990 WL 36129, at *3–*8 (E.D.La. Mar. 26, 1990); *Cox v. Velsicol Chem. Corp.*, 704 F.Supp. 85, 86–87 (E.D.Pa. 1989); *Wilson v. Chevron Chem. Co.*, No. 83–762, 1986 WL 14925, at *4 (S.D.N.Y. Dec. 17, 1986).

the same conclusion. *See* No. 92–30, 1992 WL 404681, at *2 (E.D.Ky. Oct. 19, 1992). Finally, the United States District Court for the Eastern District of New York, in *Burke v. Dow Chemical Co.,* found that FIFRA may expressly preempt a common-law failure to warn claim. *See* 797 F.Supp. at 1140.[6]

█ The court agrees with the *Papas II, Arkansas–Platte II, Gibson* and *Burke* courts that FIFRA's preemption clause, 7 U.S.C.A. § 136v(b), expressly preempts common-law failure to warn claims. In view of *Cipollone,* the court is of the opinion that Congress intended to preclude states from regulating the labeling and packaging of pesticides. "The language in 7 U.S.C.[A.] § 136v(b) more closely resembles that of the 1969 Act in *Cipollone.* Permitting a jury to award damages against [the defendant] for failure to warn would impose a de facto labeling requirement on [the defendant] under state law." *Gibson,* No. 92–30, 1992 WL 404681, at *2; *see also Papas II,* 985 F.2d 516, at 518 ("FIFRA denies states the authority to require that pesticide manufacturers conform to a state law standard of care in their labelling and packaging practices"); *Arkansas–Platte II,* 981 F.2d at 1179 ("Congress banned any form of state regulation").

The court's conclusion is consistent with the *Cipollone* Court's construction of the word "requirements" in the 1969 cigarette act. *See* ── U.S. at ──, 112 S.Ct. at 2619–20.

When one looks to the purpose underlying both legislative regulation of labeling and packaging and a state common law duty to warn, it becomes evident that those purposes are the same. Indeed, a state common law duty to warn is nothing more than a duty to label a product to provide infor-

mation. In that sense, the common law duty is no less a "requirement" in the preemption scheme than a state statute imposing the same burden.

*Arkansas–Platte II,* 981 F.2d at 1179 (quoting 7 U.S.C.A. § 136v(b)). Therefore, the court finds that "[t]o the extent that state tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly preempted." *See id.*

### E. The Levesques' Failure to Warn Claim

Having found that the plaintiffs' claim, if successful, would be preempted because it would amount to a state-imposed "requirement[ ] for labeling or packaging in addition to or different from those required [under FIFRA]," 7 U.S.C.A. § 136v(b), the court turns to its only remaining inquiry on the summary judgment motion. Here, the plaintiffs argue summary judgment is inappropriate because "[t]he defendant has offered no proof or supporting affidavits to the court to sustain the assertion that it's [sic] activities with respect to the labeling of it's [sic] product were subject to FIFRA, that it complied with FIFRA, or that the labels in question were approved by the EPA pursuant to FIFRA." Plaintiff's Objection at 2–3. The plaintiffs' argument is without merit.

█ The court finds the defendant has shown there is no dispute that an EPA-approved label was affixed to its Cutter unscented insect repellent. With its Reply Memorandum, the defendant submitted information documenting its compliance with EPA labeling procedures. Because the

---

**6.** In articulating its conclusion, the court noted that FIFRA may not preempt some claims which might broadly be labeled as "failure to warn" claims. *See Burke v. Dow Chem. Co.,* 797 F.Supp. 1128, 1140 (E.D.N.Y.1992).

Applying the somewhat subtle distinctions of *Cipollone,* we hold that, if EPA-approved labels were in fact affixed to the relevant containers, plaintiffs may not claim the defendants' products were mislabeled. If, however, warnings to the trade, warnings apart from labels or packaging, limitations on sales to profession-

als, or other protections falling generally within the ambit of warnings should have been used when the content of the label was fixed by EPA there remains a liability question for the trier of fact.

*Id. But see Papas v. Upjohn Co.,* 985 F.2d 516, 519 (11th Cir.1993) ("Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also pre-empted by FIFRA.").

plaintiffs had the opportunity to respond to these documents but did not do so, the court accepts as uncontroverted the defendant's contentions on this point. *See Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514 (the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment"); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992) (same).

The defendant's materials establish that Cutter unscented insect repellent is a substance intended for repelling an insect and is, by definition, a pesticide. *See* 7 U.S.C.A. § 136(u).[7] Because the product is a pesticide, it is therefore subject to FIFRA regulation. *See id.* § 136a(a).[8] Furthermore, after considering the defendant's submissions, the court finds the defendant properly registered its product with the EPA. The defendant submitted its registration to the EPA on May 6, 1985. *See* Exhibit A, Reply Memorandum. The EPA approved the defendant's registration on December 12, 1985. *See* Exhibit B, Reply Memorandum. As the court has previously indicated, a manufacturer must comply with the EPA Labeling Requirements for Pesticides and Devices to obtain EPA approval of its label. *See generally* 40 C.F.R. § 156.10 (1990). The court finds that the defendant complied with EPA procedure. In addition, the court finds that the EPA approved the current label on the defendant's product on April 6, 1990 and that that label meets all EPA regulations. *See* Exhibit D, Reply Memorandum.

Because the court has found that an EPA-approved label was affixed to the defendant's product, the court concludes there is no genuine issue of material fact that FIFRA expressly preempts the plaintiffs' failure to warn claim. *See Papas II,* 985 F.2d 516, at 520; *Arkansas–Platte II,* 981 F.2d at 1178–79; *Gibson,* No. 92–30, 1992 WL 404681, at *2; *Burke,* 797 F.Supp. at 1140. Therefore, the court grants summary judgment in favor of the defendant on that portion of count one of the complaint alleging a claim of failure to warn.

*Count Two: Breach of Warranty*

In count two of the complaint, the plaintiffs allege the defendant breached "implied warranties of safety, fitness and merchantability," and "express warranties by affirmation of fitness, safety and merchantability." Complaint, Count II, ¶¶ 7, 8. The defendant contends the court must dismiss any common-law breach of implied warranty claim in count two because New Hampshire does not recognize such a common-law cause of action and because New Hampshire statutes provide a complete remedy.[9] The plaintiffs counter that New Hampshire recognizes a breach of warranty claim, citing N.H.Rev.Stat.Ann. § 382–A:2–313 (1961) (express warranties by affirmation, promise, description and sample),[10] N.H.Rev.Stat.Ann. § 382–A:2–

---

7. The statute provides, in relevant part, that "[t]he term 'pesticide' means (1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, and (2) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant...." 7 U.S.C.A. § 136(u) (West Supp. 1992).

8. The statute provides, in relevant part: "Except as provided by this subchapter, no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter." *Id.* § 136a(a).

9. In support of the position that New Hampshire does not recognize a common-law action for breach of implied warranty, the defendant properly points this court to cases including *Raymond v. Eli Lilly,* 412 F.Supp. 1392, 1403 (D.N.H. 1976), *aff'd,* 556 F.2d 628 (1st Cir.1977) ("It is unclear whether New Hampshire recognizes an action for breach of implied warranty at common law"); *Brescia v. Great Road Realty Trust,*

117 N.H. 154, 157, 373 A.2d 1310 (1977) ("In this state, the statutory implied warranties of the Commercial Code are deemed to afford a complete remedy, and no common law cause of action in contract based on implied warranty is recognized"); and *Stephan v. Sears Roebuck & Co.,* 110 N.H. 248, 250, 266 A.2d 855 (1970) ("[W]e therefore see no need for a common-law cause of action in contract based on implied warranty. The counts based on such a warranty, therefore, should be dismissed").

10. The statute provides:
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates

314 (warranty of general merchantability),[11] and N.H.Rev.Stat.Ann. § 382–A:2–315 (warranty of fitness for a particular purpose).[12] The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir.1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (motion to dismiss under Fed.R.Civ.P. 12(b)(6)). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992) (Rule 12(b)(6) motion); *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir.1991) (Rule 12(c) motion). Great specificity is not required to survive a Rule 12 motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'" *Garita*, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Prac-*

*tice and Procedure* § 1357 (1990)). In the end, the court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" *Santiago de Castro*, 943 F.2d at 130 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988).

■ The court notes the defendant appears to concede that the plaintiffs may be able to proceed under the statutes they have cited. "[C]auses of action based on strict liability and under RSA 382–A:2–313 ... RSA 382–A:2–314 ... and RSA 382–A:2–315 ... offer [the plaintiffs] a complete remedy." Defendant's Motion to Dismiss Plaintiffs' Breach of Implied Warranty Claim at 2. Nevertheless, the defendant argues the court must dismiss the plaintiffs' common-law claim because "[n]owhere in Count II of Plaintiffs' pleadings do plaintiffs reference RSA 382–A:2–313[,] RSA 382–A:2–314[,] or RSA 382–A:2–315." Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' Breach of Implied Warranty Claim at 1. In light of the court's inquiry in reviewing a

---

an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. N.H.Rev.Stat.Ann. § 382–A:2–313 (1961).

11. The statute provides:

(1) Unless excluded or modified ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description;

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity with each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified ... other implied warranties may arise from course of dealing or usage of trade.

*Id.* § 382–A:2–314.

12. The statute provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified ... an implied warranty that the goods shall be fit for such purpose.

*Id.* § 382–A:2–315.

**72**

Rule 12(c) motion, the defendant's argument is without merit.

"The district court is required to construe pleadings liberally. It is not fatal to a complaint that a legal theory has been mischaracterized or that the precise language invoking jurisdiction has not been used." *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 226–27 (1st Cir.1990). In *Torres Ramirez*, a civil rights action under 42 U.S.C.A. § 1983 (West 1981), the plaintiff's complaint alleged the defendants' actions were negligent and had resulted in a loss of his liberty. *Id.* at 226. The defendants moved to dismiss the complaint, which the court denied after finding the plaintiff had stated a cognizable claim of a violation of his constitutional rights. *Id.* "The district court found that while the complaint failed to invoke the proper level of culpability and the words 'due process,' *plaintiff alleged facts that, if true, would amount to a violation of the Due Process Clause.*" *Id.* (emphasis added). Moreover, the *Torres Ramirez* court noted that the plaintiff, in his opposition to defendants' motion to dismiss, argued that the actions he alleged in the complaint constituted "deliberate callous indifference" to his liberty interest. *Id.* According to the court, "[t]he parties were therefore aware of plaintiff's legal theory. There was no prejudice to the defendant" in construing the complaint as stating a violation of the Due Process Clause. *Id.*

This is the precise scenario before the court. In this action, the plaintiffs have alleged sufficient facts which, if true, would entitle them to relief under N.H.Rev.Stat. Ann. § 382–A:2–313, N.H.Rev.Stat.Ann. § 382–A:2–314, or N.H.Rev.Stat.Ann. § 382–A:2–315. *See Torres Ramirez*, 898 F.2d at 226. It is not fatal to the plaintiffs' claim that they did not reference these statutes explicitly in the complaint. *See id.* at 226–27. Moreover, the court notes that nowhere in the complaint do the plaintiffs invoke the words "common-law" breach of warranty claim. Finally, the court emphasizes that the defendant recognized that the plaintiffs had viable causes of action under N.H.Rev.Stat. Ann. § 382–A:2–313, N.H.Rev.Stat.Ann. § 382–A:2–314, or N.H.Rev.Stat.Ann. § 382–

A:2–315. *See* Defendant's Motion to Dismiss Plaintiffs' Breach of Implied Warranty Claim at 2. The defendant was aware of the plaintiffs' legal theory and, therefore, has suffered no prejudice from the court construing the complaint as stating a statutory cause of action. The court is satisfied that "[t]he purpose of pleading, to give parties adequate notice of claims and the grounds on which they rest, was served here." *Torres Ramirez*, 898 F.2d at 227 (citing Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

*Conclusion*

For the foregoing reasons, the defendant's motion to dismiss that part of count one of the complaint alleging a common-law failure to warn claim (document no. 10) is granted. The defendant's motion to dismiss that part of count two of the complaint alleging a common-law implied warranty claim (document no. 11) is denied.

SO ORDERED.