Jose AYALA, et al, Plaintiffs,

v.

UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901, et al Defendants.

Civil No. 94–2234 (HL).

United States District Court, D. Puerto Rico.

June 16, 1995.

John Ward–Llambias, Santurce, PR, for Jose Ayala, Alexis Rodriguez, Hector E. Sanchez, Carlos J. Pizarro, Miguel A. Marin, Jose L. Ayala, Rafael Melendez, David Ayala, Victor M. Maysonet, Jose D. Torres, Jose De–Leon, Manuel D. Santiago, Pedro J. Torres, Ramon A. Lourido, Nestor L. Ayala, Adolfo Velez.

Ana R. Biascoechea, Hato Rey, PR, for Union de Tronquistas de Puerto Rico, Local 901.

Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for Crowley American Transport, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment filed by Defendants Crowley American Transport, Inc. ("Crowley") and Unión de Tronquistas de Puerto Rico, Local 901 ("the Union"). Crowley is a corporation engaged in the maritime shipping industry in Puerto Rico. The Union is a labor organization that represents Crowley's union employees. Plaintiffs are sixteen [1] Union members and Crowley employees who work in the marine department. They bring this action under section 301 of the Labor Management Relations Act [2] ("LMRA"), alleging a breach of contract by Crowley and a breach of the duty of fair representation by the Union.

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Since 1977, Crowley and the Union have been parties to a series of collective bargaining agreements.[3] The dispute in this case revolves around the provisions in the agreements regarding "ship and barge employees" of the marine department. Under the current collective bargaining agreement ("CBA"),[4] Crowley maintains a list of these employees to do the loading and unloading of ships, barges, and containers.[5] The employees appear on the list based on their seniority.[6] A work schedule naming the vessels to be loaded or unloaded is posted approximately twelve hours prior to the time of the job.[7] At a job call, the marine department laborers are selected for work based on their seniority on the list.[8] A laborer called to work on a ship or barge is guaranteed wages for eight hours of work for that day.[9] A laborer who is not called, however, will not work on that day. Under this system, a marine department laborer is not guaranteed a 40–hour work week.[10] Workers in other Crowley departments, however,

1. Originally, thirty-nine Plaintiffs brought this action. On December 14, 1994, twenty-three Plaintiffs withdrew their claims. See Docket nos. 13 & 14.

2. 29 U.S.C.A. § 185 (West 1978).

3. Docket no. 23, exhibits 1–6 & Docket no. 25, exhibit 1.

4. The language of the collective bargaining agreements has changed over the years. The parties do not argue that there have been any significant changes in the provisions at issue. See Docket no. 32, at 7; Docket no. 36, at 26. Accordingly, the Court will refer only to the CBA currently in force.

5. Docket no. 25, exhibit 1, art. XVII, sec. 1. The English translation of the CBA submitted by Defendants contains two versions of article XVII. The version at pages 49–56 of exhibit 1 is incomplete. Accordingly, the Court will use the version at pages 57–64.

6. Docket no. 36, at 22–23; docket no. 23, exhibit 7, para. 11.

7. Docket no. 23, statement of uncontested facts, para. 11, and exhibit 9, para. 22.

8. Docket no. 25, exhibit 1, art. XVII, sec. 2.

9. Docket no. 25, exhibit 1, art. XVII, sec. 5.

10. Docket no. 36, at 22; docket no. 23, exhibit 9, para. 14.

do have guaranteed 40–hour work weeks.[11]

Prior to the implementation of this seniority list and job call in the marine department, the loading and unloading of vessels were performed by "substitute employees" whom Crowley would call as they were needed.[12] These employees were not protected by a collective bargaining agreement and were not guaranteed 40–hour work weeks; regular employees in other departments did have these protections and guarantees. A conflict arose when regular employees in other departments sought to supplement their regular hours with overtime work in the marine department, thereby denying work to the substitute employees.[13] In order to protect the substitute workers who were on call for the marine department, the Union negotiated for and obtained their inclusion in the collective bargaining agreement of 1977.[14] The clauses that provide for these workers are found in article 17 of the current CBA.

The provisions in the CBA concerning seniority are contained in article XVI. The following sections of article XVI read as follows:

### Section 1—Definition

The right to seniority is defined as the time of service of the employee by contracting unit, by department, and by classification.

### Section 2—Application

The right to seniority will prevail in the assignment of overtime hours, the assignment of vacations, work shifts, suspension for economic reasons, claim of positions, reemployment, and promotion.

\*　\*　\*　\*　\*　\*

### Section 7—Reduction for Economic Reasons

When the Company deems it necessary to reduce personnel for economic reasons or lack of work, it will do so in the following order: layoffs will be given to those employees with the least seniority in the Company in the classification of the affected department, in the event that in the affected department there is more than one employee with the same seniority in the Company within the same classification, the employee that has the least seniority in the affected classification will be laid off, and if [the classification-level seniority is the same], the layoff will be given to the employee with the least seniority in the department.

\*　\*　\*　\*　\*　\*

### Section 9—The Right to Claim Positions

In the event of a reduction of personnel for economic reasons or for lack of work, the affected employees will use, as their first alternative, their seniority right in the Company within their occupational classification to claim positions of the same classification occupied by employees with less seniority in the Company than the affected employee. If the affected employee cannot [claim the position of] any employee within their same classification, he will use his right to seniority in the Company to claim any other position occupied by an employee with less seniority in the Company provided the claiming employee can perform the work.[15]

Starting in 1980, Crowley has closed down some of its other departments, and the employees in those other departments have been placed on the marine department list.[16] These employees have been given seniority on the marine department list at a level commensurate with their company-wide seniority.[17] Thus, these employees have "bumped" some marine department employees, including the Plaintiffs, who were already on the list.[18] That is, as employees with more company-wide seniority than Plaintiffs have moved onto the marine de-

---

11. Docket no. 36, at 22.

12. Docket no. 36, at 24–25; docket no. 23, exhibit 8, para. 9.

13. Docket no. 36, at 25; docket no. 23, exhibit 8, para. 9.

14. Docket no. 36, at 25.

15. Docket no. 25, exhibit 1, at 34–37.

16. Docket no. 36, at 26–27.

17. Docket no. 36, at 26–27.

18. Docket no. 36, at 28–29.

partment list, these employees have been placed ahead of Plaintiffs and have been given more seniority on the list than Plaintiffs.[19] The controversy in this case arises out of this manner of determining seniority.[20]

On February 7, 1994, Plaintiffs filed a grievance with the union steward and wrote to José Cádiz Ayala ("Cádiz"), the Union's secretary treasurer, regarding this practice.[21] Cádiz stated that he held meetings both with Plaintiffs and with a group of Crowley employees who opposed Plaintiffs' grievance.[22] Pursuant to the CBA's provisions on resolving grievances,[23] on April 5, 1994, the Union submitted the dispute to Puerto Rico's Department of Labor and Human Resources for resolution by arbitration.[24] In the submission to arbitration, the Union's allegation of the controversy read, "One group alleges that the company is violating the agreement and the other alleges that it isn't." [25] Plaintiffs did not agree with the Union's allegation as it appeared in the arbitration submission; they sent a letter to Cádiz objecting to the submission and they prepared an amended submission.[26] The allegation in the amended submission read, "That the provisions of the Collective Bargaining Agreement are being violated, in relation to the selection of place and work shift in keeping with seniority in the classification, as set forth in Section 2 of Article XVII of the agreement." [27] Cádiz

informed Plaintiffs that because the allegation of their submission differed from the original allegation, the arbitration claim would be withdrawn.[28] In light of this disagreement over the language of the submission, the Union and Crowley entered into a stipulation to amend section 2 of article XVII of the CBA.[29] The amendment stated that employees bumping onto the marine department list would retain their company-wide seniority.[30] The stipulation was put to a vote and approved at an assembly of Union members.[31] One day before the Union and Crowley formally subscribed the stipulated amendment, Plaintiffs brought this action.

Plaintiffs allege that the above-described system of determining seniority constitutes a breach of the CBA by Crowley. Plaintiffs further allege that the Union's refusal to submit the issue to arbitration and to defend their position before Crowley was a breach of the Union's duty of fair representation. In their motion for summary judgment, Crowley and the Union argue that Crowley has not breached the CBA and that the Union complied with its duty of fair representation to both Plaintiffs and the other Union members, including the workers that bumped onto the list. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

19. Docket no. 36, at 28–29.

20. Plaintiffs Néstor Ayala, Rafael Meléndez, and Miguel Marín all bumped onto the marine department list. *See* Docket no. 36, at 28; docket no. 23, exhibits 12L, 12M, 12N; exhibit 15 at 7; exhibit 16 at 10; exhibit 17 at 19. It appears that if Plaintiffs were to succeed in challenging this practice of determining seniority, these three Plaintiffs would in effect be reducing their own seniority on the list.

21. Docket no. 36, at 29; docket no. 25, exhibit 32; docket no. 23, exhibit 30.

22. Docket no. 23, exhibit 8, para. 17–18.

23. Docket no. 25, exhibit 1, at 23–27.

24. Docket no. 36, at 29; docket no. 23, exhibit 33.

25. Docket no. 23, exhibit 33.

26. Docket no. 23, exhibits 36 & 37.

27. Docket no. 23, exhibit 37.

28. Docket no. 36, at 30; docket no. 23, exhibit 38.

29. Docket no. 36, at 31.

30. The pertinent part of the stipulated language amending section 2 reads as follows:

The employees from the List will select the place and shift for work in keeping with their seniority in the classification in the call; it being understood that the seniority on the list of an employee that claims a post on the list due to personnel reduction because of economy or lack of a workshop or because he is disabled from carrying out the functions of his occupational classification, will for all intents and purposes be his seniority in the hiring unit.
Docket no. 23, exhibits 39 & 40.

31. Docket no. 36, at 31.

## DISCUSSION

At the outset, the Court notes that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

Plaintiffs are bringing a hybrid suit under section 301 of the LMRA, alleging both a breach of contract by Crowley and a breach of the duty of fair representation by the Union. In order for a plaintiff to prevail in a hybrid suit, he must prove both that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983); *Chaparro–Febus v. Local 1575*, 983 F.2d 325, 330 (1st Cir.1992). If the plaintiff is unable to prove either one of his claims, the entire cause of action must fail. *Miller v. U.S. Postal Serv.*, 985 F.2d 9, 11 (1st Cir. 1993); *Chaparro–Febus*, 983 F.2d at 330–31.

A union has a statutory duty to fairly represent all of the employees in the bargaining unit, both in the collective bargaining negotiations and in the enforcement of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967). A union has a duty to exercise its power in the interest and behalf of its worker members. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74, 111 S.Ct. 1127, 1133, 113 L.Ed.2d 51 (1991) (quoting *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944)). This duty is akin to a fiduciary's duty to its beneficiaries. *Id.* at 74, 111 S.Ct. at 1134. A union breaches its duty of fair representation when its conduct is either arbitrary, discriminatory, or in bad faith. *Id.* at 67, 111 S.Ct. at 1130; *Chaparro–Febus*, 983 F.2d at 330; *Colon Velez v. Puerto Rico Marine Management, Inc.*, 957 F.2d 933, 940 (1st Cir.1992). This rule applies to all union activity. *Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. at 1130.

A union's action is arbitrary only if, in light of the factual and legal climate at the time of the union's conduct, the union's action was "so far outside a 'wide range of reasonableness' " as to be wholly arbitrary or irrational. *Id.* at 78, 111 S.Ct. at 1136 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. at 681, 686, 97 L.Ed. 1048 (1953)); *Chaparro–Febus*, 983 F.2d at 330. A court's examination of a union's conduct must be "highly deferential" and must recognize the wide latitude that a negotiator needs for the effective performance of his or her bargaining responsibilities. *Air Line Pilots*, 499 U.S. at 78, 111 S.Ct. at 1135; *Miller*, 985 F.2d at 12. A court may not substitute its own views for those of the union. *Miller*, 985 F.2d at 12. Mere negligence or error in judgment does not constitute a breach of the duty of fair representation. *Achilli v. John J. Nissen Baking Co.*, 989 F.2d 561, 563 (1st Cir.1993); *Miller*, 985 F.2d at 12. A court must grant "great latitude" to a union determining whether an employee's grievance has merit and whether to pursue it. *Miller*, 985 F.2d at 12.

A union employee does not have an absolute right to have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. A union does not have a duty to arbitrate a worker's grievance if the union honestly and in good faith believes that the grievance is without merit. *Chaparro–Febus*, 983 F.2d at 331. Moreover, the union must balance and consider the legitimate interests of all of its members. *Colon Velez*,

957 F.2d at 940; *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 298 (1st Cir.1986). The settling of a grievance outside of arbitration does not, by itself, constitute a breach of the duty of fair representation. *Vaca*, 386 U.S. at 192–94, 87 S.Ct. at 918; *Chaparro-Febus*, 983 F.2d at 331. Additionally, a union's decision to give priority to one group of employees over another is not, without more, a breach of its duty. *See Chaparro-Febus*, 983 F.2d at 330–31.

█ In the case before the Court, Plaintiffs allege that the Union's refusal to submit the seniority issue to arbitration and to defend their position before Crowley was a breach of the Union's duty of fair representation. The Court disagrees. Plaintiffs have adduced no evidence that the Union's conduct with regard to their grievance was either arbitrary, discriminatory, or bad faith. This case arises out of the differing interests of two groups of Union members. One group, Plaintiffs, is opposed to the currently in-force system which allows workers from other departments to bump onto the marine department list and retain their company-wide seniority level. The second group is made up of workers who favor this system which protects their company-wide seniority when they move to the marine department. In determining whether and how vigorously to pursue Plaintiffs' grievance, the Union had to consider this second group's interest and balance it against the Plaintiffs' interest. If the Union had pursued the grievance as vigorously as Plaintiffs would have liked, the Union would have been working against the interests of the second group. The fact that the Union did not do so does not constitute a breach of its duty of fair representation.

As stated above, Plaintiffs did not have an absolute right to arbitrate their claim. *See Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. Nonetheless, the Union was prepared to submit the dispute to arbitration. In making its submission, the Union had a duty to balance the legitimate interests of Plaintiffs with the legitimate interests of the workers who favored the current system of determining seniority. *See Colon Velez*, 957 F.2d at 940.

The Union presented the grievance to arbitration in a neutral manner, stating that "One group alleges that the company is violating the agreement and the other alleges that it isn't." [32] Plaintiffs, however, objected to this description of the dispute and prepared a submission that read, "That the provisions of the Collective Bargaining Agreement are being violated, in relation to the selection of place and work shift in keeping with seniority in the classification, as set forth in Section 2 of Article XVII of the Agreement." [33] The Union withdrew the claim from arbitration. Plaintiffs' proposed submission was biased towards Plaintiffs' interests and against the interests of the workers who favored the current system. In order to comply with its duty of fair representation to all its members, the Union had to submit an allegation that balanced the interests of both groups of workers in this dispute. Plaintiffs' proposed submission did not balance these interests. The Court finds that the Union's presentation of the dispute was a proper balancing of the interests of the two groups of workers and was not so far outside a wide range of reasonableness as to be wholly arbitrary or irrational.

After withdrawing the dispute from arbitration, the Union entered into a stipulation with Crowley amending the CBA to explicitly state that employees bumping onto the marine department list would retain their company-wide seniority. This stipulation was put to a vote and approved at an assembly of Union members. Plaintiffs may not be satisfied with the outcome of the vote. The Court finds, however, that the Union's submission of the issue to a vote was an equitable, reasonable, and democratic means of resolving the dispute and a proper balancing of the interests of Plaintiffs with the interests of other Union members.

█ Lastly, the Union argues that the system of allowing workers to bump onto the marine department list and retain their company-wide seniority does not violate the CBA. Section 9 of article 16 of the CBA provides that in the event of a reduction of

---

32. Docket no. 23, exhibit 33.

33. Docket no. 23, exhibit 37.

personnel, the affected employee may "use his right to seniority in the Company to claim any other position occupied by an employee with less seniority in the Company provided the claiming employee can perform the work."[34] The Court finds that a fair reading of section 9 and the rest of the CBA supports the Union's position that workers bumping onto the marine department list should retain their company-wide seniority. The fact that the Union's interpretation of the CBA gives priority to a group other than Plaintiffs does not constitute a breach of the Union's duty. *See Chaparro–Febus,* 983 F.2d at 330–31.

In conclusion, the Union had to balance the interest of two groups within its membership. The Union may not have pursued Plaintiffs' grievance as vigorously as they would have liked. The language of the CBA and the interests of other workers, however, constituted good faith reasons to justify the Union's conduct. The Court must be highly deferential in reviewing the Union's response to this dispute. *See Air Line Pilots,* 499 U.S. at 78, 111 S.Ct. at 1135; *Miller,* 985 F.2d at 12. Accordingly, the Court finds that there is no genuine issue of material fact as to whether the Union's conduct constituted a breach of its duty of fair representation. Because Plaintiffs' claim of breach of the duty of fair representation fails, the entire action must be dismissed. *See Miller,* 985 F.2d at 11.

WHEREFORE, the Court hereby **grants** Defendants' motion for summary judgment (Docket no. 23) and dismisses this claim.

**IT IS SO ORDERED.**

---

34. Docket no. 25, exhibit 1, at 37.