NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  06a0357n.06
Filed:  May 17, 2006

No. 05-6083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DIANE GOLDEN,                                   )
                                                )
    Plaintiff-Appellant,                       )
                                                )
v.                                              )  ON  APPEAL  FROM  THE  UNITED
                                                )  STATES  DISTRICT  COURT  FOR  THE
COMMUNICATIONS  WORKERS  OF                     )  MIDDLE DISTRICT OF TENNESSEE
A M E R I C A ,   A F L - C I O   a n d         )
COMMUNICATIONS  WORKERS  OF                     )
AMERICA, LOCAL 3808,                            )
                                                )
    Defendants-Appellees.                      )

Before:  BOGGS, Chief Judge; SUTTON, Circuit Judge; SCHWARZER, District Judge.[*]

SUTTON, Circuit Judge.  Diane Golden challenges the district court's summary disposition of her lawsuit against the Communications Workers of America and its local affiliate (collectively the union), which alleged that the union breached its duty of fair representation under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Because Golden has failed to establish a cognizable § 301 claim, we affirm.

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

I.

In November 2000, Bell South Business Systems (Bell Business) promoted Diane Golden to the position of service consultant. Soon after she received the promotion, another employee of Bell Business, Randall Norris, filed a grievance with the union, arguing that the collective bargaining agreement required the company to promote him instead on seniority grounds. The company permitted Golden to remain in her position during the grievance process.

While the union processed the Norris grievance, another service-consultant position opened at Bell Business in early 2001. After the company promoted Jeannie Raynes to that position, Sharon Payne filed a grievance, claiming that she was entitled to it. The parties settled the dispute, permitting Payne to take the promotion and forcing Raynes' removal from the position in June 2001. Raynes remained a service consultant nonetheless, because an "anticipatory vacancy" provision in the Bell Business collective bargaining agreement (according to the union) permitted the company to retain improperly promoted employees when it expected vacancies in that position in the near future. JA 177–80.

At the end of 2001, Bell Business became a part of BellSouth. After the reorganization, all Bell Business employees became subject to BellSouth's collective bargaining agreement.

After the Payne and Raynes promotions and after the reorganization, things did not work out well for Golden. Norris eventually succeeded in his grievance, and on December 24, 2003, he replaced Golden, forcing her to return to her pre-2000 (lower-paying) job at the company. In

response, Golden filed a grievance of her own, arguing that she "had no opportunities for jobs that have come and gone" during the pendency of Norris's grievance and that she should have been given Raynes' job. JA 262. The union supported the grievance through the third step, after which the union's district vice president concluded that it "would be unable to persuade an arbitrator to sustain [Golden's] grievances." D. Ct. Op. at 4.

Golden then filed this lawsuit against the union arguing that it had violated § 301 of the Labor Management Relations Act by breaching its obligation to represent her effectively. Reasoning that Golden had failed to "meet the stringent standard for finding breach of the union's duty of fair representation," the district court granted the union's motion for summary judgment. *Id.* at 3.

II.

We give fresh review to the district court's summary judgment decision, construing all reasonable inferences in favor of the non-moving party and sustaining a grant of summary judgment if no genuine issue of material fact remains. *Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935 (6th Cir. 2004). To prevail on her claim against the union under § 301 of the Labor Management Relations Act, Golden had to prove that BellSouth breached the collective bargaining agreement and that the union breached its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983). As a matter of law, she has not established either element of this claim.

A.

The resolution of this dispute turns on the timing of two job vacancies—the position that Golden initially filled and the position that Raynes currently holds—and BellSouth's and the union's handling of each vacancy. With respect to the position that Golden initially filled, she concedes that, under the governing collective bargaining agreement, Norris deserved the promotion that Golden received in 2000 and thus acknowledges that BellSouth properly allowed him to fill that position in 2003.

The Raynes position is a different, and more complicated, story. As with Golden's initial promotion, the company acknowledges that it mistakenly promoted Raynes and corrected that error by replacing her with Payne. The wrinkle is what the company did after replacing Raynes. Under the Bell Business collective bargaining agreement in effect in 2001, the company could fill anticipated future vacancies with employees whom it had improperly promoted. Invoking that provision, Bell Business chose to keep Raynes in a service-consultant position in anticipation of a future vacancy in that area. No one questions the company's authority to interpret the prior agreement in this manner, and no one questions the company's application of the provision to Raynes.

The problem, as Golden sees it, is that she did not have the same chance to fill a future vacancy because she was still a service consultant in 2001—and would remain one until Norris's promotion in 2003. While we sympathize with the plight that Golden faced upon her demotion, we

cannot see how she had a right to any other treatment. Golden did not have a legitimate claim to either the vacancy Payne filled or the one Raynes eventually filled. The Bell Business collective bargaining agreement in place at that time contained a "time-in-title" clause that required an employee in a newly filled vacancy to remain in that position for a period of 24 months. JA 154–55, 173–74. Bell Business promoted Golden in November 2000 and Raynes in early 2001. The company removed Raynes and then retained her in an "anticipatory vacancy" in June 2001. At the time of each vacancy, in other words, over a year remained on Golden's time-in-title requirement. Once Golden voluntarily accepted the service-consultant promotion in 2000, she thus could not have applied for the service-consultant job Raynes temporarily filled or the "anticipated vacancy" position she permanently filled.

Attempting to overcome this impediment to her argument, she maintains that other jobs opened up after the time-in-title requirement had expired. But aside from the unsupported assertion made by the union affiliate in the initial grievance—to the effect that "several Wage Scale 36 jobs [for] which [Golden] was qualified" became available after Golden's promotion, JA 262—no evidence substantiates that claim.

Golden persists that because Raynes has less seniority, BellSouth should have demoted her instead of Golden after Norris's successful grievance. But Golden presents no evidence that the collective bargaining agreement in existence in 2003 (which is to say BellSouth's collective bargaining agreement) mandated (or even authorized) such a result. The only provision to which either party refers with regard to seniority requires only that BellSouth fill vacancies, all else being

equal, with the most senior employee. By the time BellSouth demoted Golden, the company had no service-consultant vacancies; there is no evidence to suggest that they anticipated any future vacancies; and at any rate the BellSouth collective bargaining agreement did not have an "anticipatory vacancies" provision. Nor has Golden contradicted the union's position that by longstanding agreement with the employer, the proper response to an employee's successful grievance was to demote the improperly promoted employee. All arguments considered, Golden has failed as a matter of law to show that BellSouth violated the collective bargaining agreement in demoting her.

B.

Even if there were room for debate on this point, even if Golden could show that BellSouth violated the labor agreement, we still would conclude that Golden failed to bring a cognizable fair-representation claim. "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998). Under the arbitrariness prong (upon which Golden principally relies), "a union's actions breach the duty of fair representation only if the union's conduct can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational." *Id*. (internal quotation marks and brackets omitted). "[T]his 'wide range of reasonableness,'" the Supreme Court has explained, "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong. . . . A union's conduct can be classified as arbitrary

only when it is irrational, when it is without a rational basis or explanation." *Id*. at 45–46 (quoting

*Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 81 (1991)).

Golden cannot satisfy this imposing standard. The union did not ignore Golden's grievance

or fail to investigate the matter. It represented her in the first three rounds of the grievance process,

and initially raised the same questions that Golden pursues here about Raynes' promotion. Nor did

the union act irrationally in choosing not to pursue the grievance after three rounds. Appreciating

that the outcome in the case was unfortunate, the union's district vice president explained that the

bargaining agreement did not provide any basis upon which an arbitrator might rule in favor of

Golden. In offering this explanation, the union cited its policy of "remov[ing] the person who was

erroneously selected and plac[ing] the grievant in the job," then noted that "there are no contractual

provisions that allow us alternatives." JA 268. The cases in which erroneously selected individuals

had kept their jobs, the union added, were "settlements that were made at the local level" and that

the company was unwilling or unable to duplicate in this case. *Id*. These explanations fall

comfortably within the realm of the rational and show that the union satisfied its fair-representation

duty.

Golden separately argues that the union discriminated against her, pointing out that other

members in similar circumstances have remained in their jobs instead of being demoted. To support

this claim, Golden points to an admission by the defendants that in the past the local union has

"entered into agreements with [BellSouth] which allow[ed] erroneously promoted employees such

as Golden to retain their position[s]." JA 197. But the duty of fair representation means that a union

must not "invidious[ly] discriminat[e]" against its members, not that it must treat them identically. *Air Line Pilots Ass'n*, 499 U.S. at 81 (noting that a particular compromise, though treating employees differently, "was not invidious 'discrimination' of the kind prohibited by the duty of fair representation"); *see also Chaparro-Febus v. Int'l Longshoremen's Ass'n, Local 1575*, 983 F.2d 325, 330–31 (1st Cir. 1992) ("However, the situation unavoidably required the union to make a determination as to which employees were to have priority over others. That it did so—in a manner which, on its face, seems reasonable and in conformity with controlling agreements—does not, by itself, show invidious discrimination of the kind prohibited by the duty of fair representation.") (internal quotation marks omitted); *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1304 (7th Cir. 1992) ("The plaintiffs have offered no evidence . . . . implicating invidious discrimination, which is necessary for the discrimination prong of the fair representation analysis.").

Despite this requirement, Golden presents no evidence supporting the claim that the union invidiously discriminated against her, as opposed to evidence showing that the union did its best to represent its members in what became a zero-sum allotment of service-consultant positions in which the price of Golden's improper elevation to the position for three years was that no other positions were available by the time BellSouth demoted her. As regrettable (and as eminently unpredictable) as this sequence of events was, it does not show cognizable discrimination. What the Supreme Court said of a similar situation in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953), applies here: "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such

differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected."

Aside from the promotions of Payne and Raynes, Golden mentions the names of five other employees—James Culbertson, Michele Carroll, Lisa Lashlee, Karen Terry, Deborah Wilson—to support her invidious-discrimination claim but does so without offering any evidence about their job promotions, much less evidence showing that the union's treatment of them demonstrates invidious discrimination against her. For its part, the union offers evidence that Carroll, Lashlee and Terry won their grievances but that other employees were allowed to remain in similar positions because there were sufficient vacancies. Again, however, no evidence indicates that these vacancies took place at a time when Golden could have been promoted or that she was even qualified for the "collection representative" positions in question. The union further explains that Wilson's promotion did not provoke a grievance and no party has presented any evidence about James Culbertson. On this record, Golden has not shown that these employees were similarly situated, and necessarily has not shown that the union's treatment of them demonstrates invidious discrimination against her.

III.

For these reasons, we affirm.